2018 DEC 20 PM 3:48

FILED

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2018 Grand Jury

CR No. 18CR00892-AB

UNITED STATES OF AMERICA,

　　　　Plaintiff,

　　　　v.

LEONEL LAREDO,
　aka "Wizard,"
　aka "Wiz,"
　aka "W,"
　aka "Leo,"
　aka "Dad,"
FRANCISCO RODRIGUEZ,
　aka "Dodger,"
　aka "D,"
　aka "Son,"
LOUIE MONTANEZ,
　aka "Bird,"
JORGE GARCIA,
　aka "Lil Blazer,"
　aka "Lil B,"
　aka "LB,"
　aka "Little Blaze,"
　aka "Mona,"
　aka "Gloria's Little Sister,"
CHRISTOPHER GONZALEZ,
　aka "Solo,"
　aka "Soliman,"
　aka "Lil Psycho,"
　aka "Soli,"
FRANK GOMEZ,
　aka "Crazy Boy,"
　aka "CB,"
RENE MOISES ASCENCIO,
　aka "Player,"

I N D I C T M E N T

[18 U.S.C. § 1962(d): Racketeer
Influenced and Corrupt
Organizations Conspiracy; 18
U.S.C. §§ 1959(a)(3), (6): Violent
Crime in Aid of Racketeering; 21
U.S.C. § 846: Conspiracy to
Distribute and to Possess with
Intent to Distribute Controlled
Substances; 21 U.S.C.
§§ 841(a)(1), (b)(1)(A),
(b)(1)(B), (b)(1)(C): Possession
with Intent to Distribute and
Distribution of Controlled
Substances; 21 U.S.C. § 843(b):
Use of a Communication Facility in
the Commission of a Drug
Trafficking Offense; 18 U.S.C.
§ 924(c)(1)(A): Possess, Use,
Carry, Brandish, and/or Discharge
a Firearm in Furtherance of, and
During and in Relation to, a Crime
of Violence or a Drug Trafficking
Crime; 18 U.S.C. § 922(g)(1):
Felon in Possession of a Firearm
and Ammunition; 18 U.S.C. § 2(a):
Aiding and Abetting; 18 U.S.C.
§§ 924(d)(1), 1963(a)(3), 21
U.S.C. § 853, and 28 U.S.C.
§ 2461(c): Criminal Forfeiture]

1  JESUS ROMERO,
       aka "Spanky,"
2  LUIS ALFREDO ROMERO,
       aka "Pest,"
3  NOE MARAVILLA BAROCIO,
       aka "Baby Thumper,"
4      aka "Noe Barocio Maravilla,"
   EDUARDO MADERA,
5      aka "Huero,"
   SAMUEL FLORES MEJIA,
6      aka "Menace,"
   VICTOR SILLAS,
7      aka "Big Show,"
   SABY PINEDA,
8      aka "Sandra,"
9      aka "Daniela Saby Pineda,"
   JOSHUA GONZALEZ,
9      aka "Triste,"
10     aka "Grande,"
   ARMANDO GARCIA,
11     aka "Mando,"
   GUADALUPE REGALADO,
12     aka "Lupillo,"
   JOSE ALVAREZ,
13     aka "Vecino,"
   EULOGIO RUVALCABA,
14     aka "Lou,"
   JENNIFER BANUELOS,
15     aka "Jenny,"
   ELIZABETH PAULINE CARBAJAL,
16     aka "Liz,"
       aka "Elizabeth Parker,"
17 MARTHA ROCA,
       aka "Martha Ofelia,"
18 IAN CARDENAS,
       aka "Samuel Camacho,"
19     aka "Fats,"
   VICTOR NOE HERNANDEZ,
20     aka "Sneaks,"
       aka "Pelon,"
21 GONZALO CERVANTES,
       aka "Gonzo," and
22 CARLOS MARROQUIN,
       aka "Bullet,"
23
24              Defendants.

25      The Grand Jury charges:

26                    INTRODUCTORY ALLEGATIONS

27

28

A.   THE RACKETEERING ENTERPRISE

1.   At all times relevant to this Indictment, defendants LEONEL LAREDO, also known as ("aka") "Wizard," aka "Wiz," aka "W," aka "Leo," aka "Dad" ("LAREDO"), FRANCISCO RODRIGUEZ, aka "Dodger," aka "D," aka "Son" ("RODRIGUEZ"), LOUIE MONTANEZ, aka "Bird" ("MONTANEZ"), JORGE GARCIA, aka "Lil Blazer," aka "Lil B," aka "LB," aka "Little Blaze," aka "Mona," aka "Gloria's Little Sister" ("J. GARCIA"), CHRISTOPHER GONZALEZ, aka "Solo," aka "Soliman," aka "Lil Psycho," aka "Soli" ("C. GONZALEZ"), FRANK GOMEZ, aka "Crazy Boy," aka "CB" ("GOMEZ"), RENE MOISES ASCENCIO, aka "Player" ("ASCENCIO"), JESUS ROMERO, aka "Spanky" ("J. ROMERO"), LUIS ALFREDO ROMERO, aka "Pest" ("L. ROMERO"), NOE MARAVILLA BAROCIO, aka "Baby Thumper," aka "Noe Barocio Maravilla" ("BAROCIO"), EDUARDO MADERA, aka "Huero" ("MADERA"), SAMUEL FLORES MEJIA, aka "Menace" ("MEJIA"), VICTOR SILLAS, aka "Big Show" ("SILLAS"), SABY PINEDA, aka "Sandra," aka "Daniela Saby Pineda" ("PINEDA"), JOSHUA GONZALEZ, aka "Triste," aka "Grande" ("J. GONZALEZ"), ARMANDO GARCIA, aka "Mando" ("A. GARCIA"), GUADALUPE REGALADO, aka "Lupillo" ("REGALADO"), JOSE ALVAREZ, aka "Vecino" ("ALVAREZ"), EULOGIO RUVALCABA, aka "Lou" ("RUVALCABA"), JENNIFER BANUELOS, aka "Jenny" ("BANUELOS"), ELIZABETH PAULINE CARBAJAL, aka "Liz," aka "Elizabeth Parker" ("CARBAJAL"), MARTHA ROCA, aka "Martha Ofelia" ("ROCA"), IAN CARDENAS, aka "Samuel Camacho," aka "Fats" ("CARDENAS"), VICTOR NOE HERNANDEZ, aka "Sneaks," aka "Pelon" ("HERNANDEZ"), GONZALO CERVANTES, aka "Gonzo" ("CERVANTES"), and CARLOS MARROQUIN, aka "Bullet" ("MARROQUIN") (collectively, "defendants"), and others known and unknown to the Grand Jury, were members and associates of a criminal organization engaged in, among other things, attempted murder, assaults,

3

trafficking in controlled substances, money laundering, illegal gambling, and extortion.  At all relevant times, this organization, known as the Florencia 13 criminal street gang (hereinafter, the "F13 Gang"), operated in the Central District of California, and elsewhere.  The F13 Gang, including its leadership, members, and associates, constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, although not a legal entity, which is engaged in, and the activities of which affect, interstate and foreign commerce.  The enterprise constitutes an ongoing organization whose members function as a continuing unit for a common purpose of achieving the objectives of the enterprise.

B.    BACKGROUND OF THE F13 GANG

At all times relevant to this Indictment:

2.    The F13 Gang was a multi-generational gang founded in Los Angeles, California in the early 1950s.  The gang began as a small group of individuals who lived in and around the area of Florence Boulevard, in and near Los Angeles, California.  Initially, the gang was primarily involved in street robberies, drug sales, and fighting with rival gang members in "turf battles."  Through the years, the gang dramatically increased its membership by absorbing smaller, less powerful local gangs.

3.    There were at least 22 cliques, or subsets, of the F13 Gang that together control an area of approximately three square miles in and around the unincorporated areas of South Los Angeles County.  Examples of these cliques included the Gangsters, 64th Street, the Termites, the Tiny Locos, Bear Street, the Malditos, and the HP (Huntington Park) Locos.  The overall number of F13 Gang cliques has

4

changed over the years as new cliques have been allowed to join the gang, and others have been expelled.  While the F13 Gang's "territory," therefore, has changed over time, it historically has been contained within the approximate area bordered by the 10 freeway to the North, Imperial Highway to the South, the 110 freeway to the West, and the 710 freeway to the East; and it included at least the unincorporated Florence-Firestone neighborhood (also known as Florence-Graham) and parts of several nearby cities, such as Huntington Park, South Gate, Maywood, Bell, and Lynwood.  Based on the strength of its numbers and its reputation for violence, the F13 Gang controlled drug trafficking and other illegal activities within its territory.

4.    The F13 Gang continually was engaged in the distribution of multiple controlled substances, including, but not limited to, methamphetamine, heroin, cocaine, and marijuana.  In addition to supplying drug-using customers, members and associates of the F13 Gang regularly sold distributable amounts of drugs to each other and to others who they believe to be "street-level" drug dealers.  F13 Gang members and associates also engaged in efforts to smuggle controlled substances into California State Prisons and the Los Angeles County Jail ("LACJ") system for use by its members and associates and for sale to the broader inmate population.

5.    To support their drug trafficking and racketeering activities, and to maintain control over their claimed "territory," F13 Gang members and associates maintained a ready supply of firearms, including handguns and rifles.  They also sold such weapons for profit.  Firearms also were often discarded or destroyed after being used to commit acts of violence on behalf of the enterprise, so

the F13 Gang regularly engaged in continued gun trafficking to ensure
that it maintained ready access to firearms at all times.  Being
publicly known to sell, and therefore possess, numerous firearms
served the additional purpose of supporting the F13 Gang's reputation
for violence and intimidation.

6.   The F13 Gang was controlled by members and associates of
the "Mexican Mafia," or "La Eme."  The Mexican Mafia was an organized
group of individuals who controlled much of the drug distribution and
other criminal activities within California State Prisons, local
county jails, and some federal prisons.  Members of the Mexican Mafia
came from the ranks of local street gangs, including the F13 Gang.
In return for allowing local street gangs to maintain control over
their territories and for protecting the gangs' members and
associates during periods of incarceration, the Mexican Mafia
required the gangs to collect and pay "taxes" on all drug trafficking
and other illicit and illegal conduct taking place in those
territories (hereinafter, "extortionate taxes").  These illicit funds
were intended to be controlled by, and were often held in trust by,
gang members and associates for the Mexican Mafia member(s) in charge
of a particular area.  Members and associates of the F13 Gang,
therefore, regularly paid extortionate taxes to the Mexican Mafia
members who oversaw the gang; and the collection of extortionate
taxes from drug dealers operating within the F13 Gang's territory was
a primary task of the gang's leadership on the streets, as was
punishing individuals who failed to pay the requisite extortionate
taxes.

7.   There were four Mexican Mafia members who maintained
leadership roles over the F13 Gang: defendant LAREDO, unindicted co-

conspirator number 1 ("Co-conspirator 1"), unindicted co-conspirator
number 2 ("Co-conspirator 2"), and unindicted co-conspirator number 3
("Co-conspirator 3").  Co-conspirator 1 presently is serving a term
of life imprisonment without the possibility of parole.  In 2004, Co-
conspirator 1 issued written "reglas," or rules, from his prison cell
at Pelican Bay State Prison that were intended to govern all F13 Gang
members and associates.  By way of these rules and later directives,
Co-conspirator 1 commanded certain senior gang members and other
select individuals to assume leadership positions within the F13
Gang's "territory."  These persons ("shot callers") were then ordered
to coordinate the illegal distribution of drugs and other criminal
activities, to ensure that extortionate taxes were collected, and
otherwise to oversee their respective portions of the F13 Gang's
territory, such as by resolving disputes both among F13 Gang members
and associates and with members of other Los Angeles gangs.  Shot
callers likewise were charged with exposing and punishing F13 Gang
members, as well as others residing in F13 Gang-controlled territory,
who were identified as having cooperated with law enforcement or who
otherwise violated the F13 Gang's rules.  Co-conspirator 2 also
presently is serving a term of life imprisonment without the
possibility of parole.  Co-conspirator 3 presently is in federal
custody at the United States Penitentiary, Administrative Maximum
Facility, in Fremont County, Colorado.

     8.   At some point after 2007, defendant LAREDO, who was in
state custody along with Co-conspirator 1, became a leader of the F13
Gang.  Defendant LAREDO, who is presently in federal custody in
connection with racketeering and drug convictions related to his F13
Gang activities, was, and is, able to disseminate instructions to the

1  F13 Gang's membership to maintain control over drug trafficking and

2  other criminal activities within the gang's territory.

3       9.    The members of the leadership of the F13 Gang who are

4  incarcerated are able to disseminate instructions to the gang's

5  membership and to maintain control over drug trafficking and other

6  criminal activities within the gang's territory through emails from

7  inmates to both in-custody and out-of-custody members and associates

8  and by telephone calls from inmates to both in-custody and out-of-

9  custody members and associates (i.e., "jail calls").

10 C.   PURPOSES OF THE ENTERPRISE

11      10.   The purposes of the F13 Gang included, but were not limited

12 to, the following:

13           a.    Enriching defendant LAREDO, Co-conspirator 1, Co-

14 conspirator 2, and Co-conspirator 3, through, among other things, the

15 remittance of the proceeds of extortionate taxes to family members,

16 friends, and associates of these four top leaders of the F13 Gang.

17           b.    Enriching the members and associates of the F13 Gang

18 through, among other things, the control of, and participation in,

19 the trafficking of controlled substances in F13 Gang territory and

20 elsewhere, the operation of illegal gambling establishments

21 ("casitas"), and the collection of extortionate taxes.

22           c.    Smuggling controlled substances to F13 Gang members

23 and associates housed in California State Prisons and the LACJ system

24 to be distributed to incarcerated individuals.

25           d.    Maintaining control over all F13 Gang territory.

26           e.    Preserving, protecting, and expanding the power of the

27 F13 Gang through the use of intimidation, violence, threats of

28 violence, assault, and murder.

8

D.    THE MEANS AND METHODS OF THE ENTERPRISE

11.   The means and methods by which the defendants, and other members and associates of the F13 Gang, conducted and participated in the conduct of the affairs of the F13 Gang included:

a.    Members and associates of the F13 Gang committed, attempted to commit, conspired to commit, and threatened to commit acts of violence, including, without limitation, murder, assaults, intimidation, and extortion, to preserve, protect, and expand the enterprise's criminal operations, and to promote discipline and enforce the rules of the F13 Gang.

b.    Members and associates of the F13 Gang promoted a climate of fear through acts of violence and threats to commit acts of violence.

c.    Leaders of the F13 Gang disseminated rules and orders to be followed by all participants in the F13 Gang.

d.    Members and associates of the F13 Gang engaged in the trafficking of controlled substances and firearms to generate income for the enterprise.

e.    Members and associates of the F13 Gang, with the permission of the gang's leaders, "taxed" drug sales, firearms trafficking, and other illegal activity within F13 Gang-controlled territory to generate income and to control the criminal activity undertaken within such territory.

f.    Leaders and shot callers within the F13 Gang controlled the collection and payment of extortionate taxes to the Mexican Mafia to preserve, protect, and expand the enterprise's control of criminal activity undertaken within its territory and to

1    ensure the protection of F13 Gang members and associates who are
2    incarcerated.

COUNT ONE

[18 U.S.C. § 1962(d)]

Paragraphs 1 through 11 of the Introductory Allegations are hereby re-alleged and incorporated by reference as though fully set forth herein.

A.   OBJECT OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, and continuing to on or about December 20, 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendants LAREDO, RODRIGUEZ, MONTANEZ, J. GARCIA, C. GONZALEZ, GOMEZ, ASCENCIO, J. ROMERO, L. ROMERO, BAROCIO, MADERA, MEJIA, SILLAS, PINEDA, J. GONZALEZ, and A. GARCIA, Co-conspirator 1, Co-conspirator 2, Co-conspirator 3, unindicted co-conspirator number 4 ("Co-conspirator 4"), unindicted co-conspirator number 5 ("Co-conspirator 5"), unindicted co-conspirator number 6 ("Co-conspirator 6"), unindicted co-conspirator number 7 ("Co-conspirator 7"), unindicted co-conspirator number 8 ("Co-conspirator 8"), unindicted co-conspirator number 9 ("Co-conspirator 9"), unindicted co-conspirator number 10 ("Co-conspirator 10"), and others known and unknown to the Grand Jury, being persons employed by and associated with the F13 Gang described in Paragraphs 1 through 11 of the Introductory Allegations of this Indictment, which constitutes an "enterprise," as defined in Title 18, United States Code, Section 1961(4), which enterprise engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the

affairs of the enterprise through a pattern of racketeering activity,

as that term is defined in Title 18, United States Code, Sections

1961(1) and 1961(5), consisting of multiple acts involving:

(1) murder, in violation of California Penal Code Sections 21a,

31, 182, 187, 189, 190, and 664;

(2) extortion, in violation of California Penal Code Sections

21a, 31, 182, 518, 519, 520, 664;

multiple acts indictable under:

(1) Title 18, United States Code, Section 1955 (relating to

prohibition on illegal gambling businesses);

(2) Title 18, United States Code, Section 1956 (relating to the

laundering of monetary instruments);

and multiple offenses involving drug trafficking in violation of

Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

It was a further part of the conspiracy that each defendant

agreed that a conspirator would commit at least two acts of

racketeering in the conduct of the affairs of the enterprise.

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE

ACCOMPLISHED

The object of the conspiracy was to be accomplished, in

substance, as follows:

1.   Defendant LAREDO, Co-Conspirator 1, Co-Conspirator 2, and

Co-Conspirator 3, and others known and unknown to the Grand Jury,

would exercise leadership over the F13 Gang on behalf of the Mexican

Mafia from within prison by issuing rules and orders to defendants

RODRIGUEZ, MONTANEZ, J. GARCIA, and C. GONZALEZ, and others known and

unknown to the Grand Jury, regarding, among other things, the

collection of extortionate taxes, the distribution of controlled

1  substances, and who held positions of authority within the F13 Gang

2  out on the streets.

3      2.    Defendants MONTANEZ, J. GARCIA, and C. GONZALEZ, and others

4  known and unknown to the Grand Jury, would communicate telephonically

5  with defendants LAREDO and RODRIGUEZ, and others known and unknown to

6  the Grand Jury, to receive direction regarding the business of the

7  F13 Gang.

8      3.    Defendants LAREDO, RODRIGUEZ, MONTANEZ, J. GARCIA, and C.

9  GONZALEZ, and others known and unknown to the Grand Jury, would

10  direct drug trafficking, acts of violence, and other criminal

11  activities within F13 Gang territory; supervise the collection of

12  extortionate taxes; and mediate disputes both among the F13 Gang's

13  members and associates and with members of other gangs.

14      4.    Defendants MONTANEZ, J. GARCIA, C. GONZALEZ, GOMEZ,

15  ASCENCIO, J. ROMERO, L. ROMERO, BAROCIO, MADERA, SILLAS, and PINEDA,

16  Regalado, Alvarez, Ruvalcaba, Banuelos, Carbajal, Roca, Cardenas,

17  Hernandez, Cervantes, and Marroquin, and others known and unknown to

18  the Grand Jury, would supply F13 Gang members and associates, and

19  others, with distributable amounts of controlled substances,

20  including, but not limited to, methamphetamine, heroin, cocaine, and

21  marijuana.

22      5.    Defendants MEJIA and SILLAS, and Marroquin, and others

23  known and unknown to the Grand Jury, would sell firearms, including

24  handguns and rifles, to members and associates of the F13 Gang.

25      6.    Defendants J. GARCIA, C. GONZALEZ, J. ROMERO, L. ROMERO,

26  MADERA, MEJIA, and SILLAS, and Marroquin, and others known and

27  unknown to the Grand Jury, would possess firearms and ammunition to

28

1  further the drug trafficking and other criminal activities of the F13
2  Gang.

3      7.    Defendants J. GARCIA and PINEDA, and others known and
4  unknown to the Grand Jury, would operate "casitas" within F13 Gang
5  territory, and elsewhere, from which F13 Gang members and associates
6  would distribute illegal controlled substances and engage in other
7  criminal activities, including illegal gambling.

8      8.    Defendants MONTANEZ, J. GARCIA, C. GONZALEZ, GOMEZ,
9  ASCENCIO, J. ROMERO, L. ROMERO, MADERA, MEJIA, SILLAS, and J.
10  GONZALEZ, and Cardenas, and others known and unknown to the Grand
11  Jury, would participate in the disciplining of members and associates
12  of the F13 Gang - or others who are deemed to have interfered with
13  the gang's criminal activities - including, without limitation,
14  through the planning of assaults and murders of such individuals.

15      9.    Defendants J. GARCIA and GOMEZ, and Ruvalcaba, Banuelos,
16  Carbajal, and Roca, and others known and unknown to the Grand Jury,
17  would participate in efforts by F13 Gang members and associates to
18  smuggle controlled substances, such as heroin, into California State
19  Prisons.

20      10.   Defendants MONTANEZ, J. GARCIA, C. GONZALEZ, GOMEZ,
21  ASCENCIO, J. ROMERO, L. ROMERO, BAROCIO, SILLAS, and A. GARCIA, and
22  others known and unknown to the Grand Jury, would collect
23  extortionate taxes from the sales of controlled substances and other
24  profitable illegal activities within F13 Gang-controlled territory.
25  C.   OVERT ACTS
26      In furtherance of the racketeering conspiracy and to accomplish
27  the object of the racketeering conspiracy, defendants LAREDO,
28  RODRIGUEZ, MONTANEZ, J. GARCIA, C. GONZALEZ, GOMEZ, ASCENCIO, J.

14

ROMERO, L. ROMERO, BAROCIO, MADERA, MEJIA, SILLAS, PINEDA, and A. GARCIA, and others known and unknown to the Grand Jury, committed and caused to be committed various overt acts, on or about the following dates, within the Central District of California, and elsewhere, including, but not limited to, the following:

1.   On December 6, 2012, defendant J. GONZALEZ possessed methamphetamine for purposes of distribution in F13 Gang territory.

2.   On April 5, 2013, defendant J. GONZALEZ stole a car in F13 Gang territory.

3.   On April 19, 2014, defendant J. GONZALEZ possessed a firearm in F13 Gang territory.

4.   On May 15, 2015, defendant J. GONZALEZ possessed a firearm in F13 Gang territory.

5.   On May 11, 2016, defendant C. GONZALEZ sold approximately 52 grams of methamphetamine for $400 to an individual who defendant C. GONZALEZ believed was a methamphetamine customer, but who was, in fact, a confidential human source working with law enforcement ("CHS-1").

6.   On May 11, 2016, defendant C. GONZALEZ, using coded language during an in-person conversation, told CHS-1 that he wanted to go to a marijuana shop to collect extortionate taxes from the marijuana shop.

7.   On May 23, 2016, defendant C. GONZALEZ sold approximately 436 grams of methamphetamine to CHS-1 for $2,600.

8.   On September 13, 2016, defendant MADERA, using coded language during an in-person conversation, told CHS-1 that he could sell CHS-1 one pound of methamphetamine.

9.   On October 12, 2016, defendants LAREDO and J. GARCIA, using coded language in a telephone conversation, discussed the cost, distribution, and sale of controlled substances that defendant LAREDO previously had provided to defendant C. GONZALEZ.

10.   On October 12, 2016, defendant J. GARCIA, using coded language in a telephone conversation, told defendant LAREDO that, if defendant J. GARCIA were to go to prison, defendant C. GONZALEZ would serve as the shot-caller of the F13 Gang.

11.   On October 17, 2016, defendants LAREDO and J. GARCIA, using coded language in a telephone conversation, discussed the cost, distribution, and sale of controlled substances in the possession of defendant C. GONZALEZ.

12.   On October 21, 2016, defendants LAREDO and J. GARCIA, using coded language in a telephone conversation, discussed the purchase and sale of controlled substances, as well as the benefit of breaking up larger quantities of controlled substances into smaller quantities to make more money through increased volume of sales.

13.   On October 23, 2016, defendant LAREDO, using coded language in a telephone conversation, told defendant J. GARCIA that it would be more profitable to break up larger quantities of controlled substances into smaller quantities to make more money through increased volume of sales.

14.   On October 25, 2016, defendants LAREDO and C. GONZALEZ, using coded language in a telephone conversation, discussed the benefit of breaking up larger quantities of controlled substances into smaller quantities; the availability of F13 Gang members who could sell the smaller quantities of controlled substances; and the

16

1    eventual distribution of drug proceeds to defendant LAREDO, Co-
2    Conspirator 1, Co-Conspirator 2, and Co-Conspirator 3.

3        15.   On October 30, 2016, defendants LAREDO and C. GONZALEZ,
4    using coded language in a telephone conversation, discussed forming
5    an alliance between the F13 Gang and two rival gangs.

6        16.   On November 1, 2016, defendants LAREDO and J. GARCIA, using
7    coded language in a telephone conversation, discussed the acquisition
8    of controlled substances for defendant C. GONZALEZ.

9        17.   On November 1, 2016, defendants LAREDO and J. GARCIA, using
10   coded language in a telephone conversation, discussed the delivery of
11   controlled substances to defendant C. GONZALEZ for further
12   distribution.

13       18.   On November 4, 2016, defendant LAREDO, using coded language
14   in a telephone conversation, told defendant C. GONZALEZ that he had
15   arranged for the delivery of a controlled substance to defendant C.
16   GONZALEZ for further distribution.

17       19.   On November 5, 2016, defendant LAREDO, using coded language
18   in a telephone conversation, told defendant J. GARCIA that defendant
19   C. GONZALEZ was going to deliver a box of controlled substances to
20   defendant J. GARCIA.

21       20.   On November 12, 2016, defendants LAREDO and J. GARCIA,
22   using coded language in a telephone conversation, discussed obtaining
23   controlled substances for distribution from Ruvalcaba.

24       21.   On November 14, 2016, defendants LAREDO and C. GONZALEZ,
25   using coded language in a telephone conversation, discussed the
26   acquisition, transportation, and receipt of controlled substances.

27       22.   On November 14, 2016, defendants LAREDO and C. GONZALEZ,
28   using coded language in a telephone conversation, discussed the

1 distribution of money to defendant LAREDO, Co-conspirator 1, Co-
2 conspirator 2, and Co-conspirator 3.

3     23.  On December 10, 2016, defendant C. GONZALEZ, using coded
4 language in a telephone conversation, told defendant J. GARCIA that
5 he collected $300 per week of extortionate taxes from a "casita" on
6 Hoover Street in F13 Gang territory, and $100 per week of
7 extortionate taxes from an individual operating slot machines at the
8 same "casita."

9     24.  On December 10, 2016, defendants C. GONZALEZ, ASCENCIO, J.
10 ROMERO, and BAROCIO, and other unidentified co-conspirators, went to
11 a "casita" on Hoover Street in F13 Gang territory to discuss and
12 collect extortionate payments from the "casita."

13     25.  On December 11, 2016, defendant J. GARCIA, using coded
14 language in a telephone conversation, told defendant C. GONZALEZ that
15 defendants J. GARCIA, J. ROMERO, and MADERA assaulted an F13 Gang
16 member earlier that day for not following F13 Gang rules.

17     26.  On December 11, 2016, defendant J. GARCIA, using coded
18 language in a telephone conversation, told defendant C. GONZALEZ that
19 he was imposing a $1,000 fine against an F13 Gang member who violated
20 F13 Gang rules.

21     27.  On December 14, 2016, defendants RODRIGUEZ and J. GARCIA,
22 using coded language in a telephone conversation, discussed the
23 collection of extortionate taxes for defendant LAREDO.

24     28.  On December 15, 2016, defendants J. GARCIA and GOMEZ, using
25 coded language in a telephone conversation, discussed their revenues
26 from drug sales.

27     29.  On December 15, 2016, defendant C. GONZALEZ shot at and
28 attempted to murder J.G., a rival gang member.

30.   On December 16, 2016, defendant J. GARCIA, using coded language in a telephone conversation, instructed defendant ASCENCIO to collect $2,000 in extortionate taxes.

31.   On December 25, 2016, defendants J. GARCIA and GOMEZ, using coded language in a telephone conversation, discussed smuggling a controlled substance into the United States from Tijuana, Mexico.

32.   On December 25, 2016, defendant J. GARCIA and Co-Conspirator 4, using coded language in a telephone conversation, discussed the distribution of heroin, with Co-Conspirator 4 noting that he charged customers $750 per ounce of heroin.

33.   On December 25, 2016, defendant J. GARCIA, using coded language in a telephone conversation, told Co-conspirator 4 that he was going to obtain four ounces of heroin, of which three ounces were for Co-conspirator 2 and one ounce was for Co-conspirator 4.

34.   On December 26, 2016, defendants RODRIGUEZ and J. GARCIA, using coded language in a telephone conversation, discussed the weekly collection of $300 of extortionate taxes from a "casita" in F13 Gang territory.

35.   On December 26, 2016, defendants J. GARCIA and ASCENCIO, using coded language in a telephone conversation, discussed the collection of a $2,000 extortionate tax from an F13 Gang member for violating F13 Gang rules.

36.   On December 27, 2016, defendant J. GARCIA and Co-conspirator 4, using coded language in a telephone conversation, discussed how Roca would transport heroin whenever defendant J. GARCIA was ready to accept delivery.

37.   On December 27, 2016, defendant J. GARCIA, using coded language in a telephone conversation, again told Co-conspirator 4

19

that he was going to obtain four ounces of heroin, of which three ounces were for Co-conspirator 2 and one ounce was for Co-conspirator 4.

38. On December 30, 2016, defendant J. GARCIA, using coded language in a telephone conversation, told Co-conspirator 4 that he was going to send Co-conspirator 4 and Co-conspirator 2 the heroin they previously discussed in the next week.

39. On December 30, 2016, defendant J. GARCIA obtained from Co-conspirator 4 Roca's phone number to facilitate a future drug transaction.

40. On December 30, 2016, defendant J. GARCIA, using coded language in a telephone conversation, assured Co-conspirator 4 that he was going to provide Co-conspirator 4 and Co-conspirator 2 with high quality heroin.

41. On December 31, 2016, defendant RODRIGUEZ, using coded language in a telephone conversation, told defendant J. GARCIA that an individual from a gang in South Gate, California, had claimed responsibility for collecting extortionate taxes within F13 Gang territory, and that the other gang member had the extortionate taxes available for defendant LAREDO.

42. On December 31, 2016, defendant J. GARCIA, using coded language in a telephone conversation, told defendant ASCENCIO that he was waiting for defendant ASCENCIO to complete a drug transaction.

43. On January 2, 2017, defendant J. GARCIA, using coded language in a telephone conversation, arranged to meet with Roca to provide her with heroin at La Barca Restaurantes in Bell, California.

44. On January 2, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told Co-conspirator 4 that he

had spoken with Roca and that the transfer of heroin would happen the following day.

45.   On January 3, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told Roca that he was on his way to meet her at La Barca Restaurantes in Bell, California to conduct a drug transaction.

46.   On January 3, 2017, defendant J. GARCIA provided Roca with approximately four ounces of heroin.

47.   On January 3, 2017, defendant J. GARCIA, using coded language in a telephone conversation, discussed how Roca was pulled over by law enforcement, that law enforcement did not find any controlled substances in her car, and that, if law enforcement had searched her car more thoroughly, they would have found the drugs and arrested her.

48.   On January 5, 2017, defendant J. GARCIA and Co-conspirator 4, using coded language in a telephone conversation, discussed that Roca currently possessed the heroin that defendant J. GARCIA provided her on January 3, 2017.

49.   On January 28, 2017, defendant J. GARCIA and Co-conspirator 4, using coded language in a telephone conversation, discussed smuggling a controlled substance into prison.

50.   On January 31, 2017, defendant J. GARCIA and Co-conspirator 2, using coded language in a text message conversation, discussed how Co-conspirator 2 was running out of heroin to distribute in California State Prison, Solano, in Vacaville, California.

51.   On January 31, 2017, defendants J. GARCIA and GOMEZ, using coded language in a telephone conversation, discussed obtaining heroin from Ruvalcaba.

52.  On February 1, 2017, defendants J. GARCIA and A. GARCIA, using coded language in a telephone conversation, discussed the collection of $400 in extortionate taxes.

53.  On February 1, 2017, defendant J. GARCIA, using coded language in both a telephone conversation and a text message, told defendant GOMEZ to call Ruvalcaba to tell him that defendant J. GARCIA would pay Ruvalcaba for four ounces of heroin.

54.  On February 1, 2017, defendant GOMEZ, using coded language in a text message, told defendant J. GARCIA that he had sent a text message to Ruvalcaba advising Ruvalcaba that defendant J. GARCIA was waiting to pay Ruvalcaba for four ounces of heroin.

55.  On February 1, 2017, defendant J. GARCIA and Banuelos, using coded language in a telephone conversation, discussed how Banuelos was on her way to distribute approximately four ounces (112 grams) of heroin, which was later seized by law enforcement, to Co-conspirator 5.

56.  On February 3, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told Banuelos that Co-conspirator 5 had been caught by law enforcement in possession of the heroin that he had obtained from Ruvalcaba and Banuelos.

57.  On February 3, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told Banuelos that defendant J. GARCIA needed to obtain four more ounces of heroin.

58.  On February 3, 2017, defendants J. GARCIA and A. GARCIA, using coded language in a telephone conversation, discussed the collection of extortionate taxes.

59.  On February 4, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told an unindicted co-

conspirator, another F13 Gang member, that the unindicted co-conspirator needed to go to an F13 Gang "casita" so that members of other gangs would know that the "casita" is controlled by the F13 Gang.

60.   On February 6, 2017, defendants J. GARCIA and GOMEZ, using coded language in a telephone conversation, discussed purchasing four ounces of heroin from Ruvalcaba and Banuelos.

61.   On February 6, 2017, defendant J. GARCIA and Banuelos, using coded language in a telephone conversation, discussed purchasing heroin from Ruvalcaba and Banuelos.

62.   On February 6, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told Co-conspirator 6, who was speaking on behalf of Co-conspirator 2, that defendant J. GARCIA was getting ready to send four ounces of heroin to Co-conspirator 2, who was then serving a term of imprisonment at Pelican Bay State Prison, in Crescent City, California.

63.   On February 6, 2017, defendant J. GARCIA and Co-conspirator 6, using coded language in a text message conversation, discussed how Co-conspirator 2 wanted the heroin to arrive the following day during a specific time range.

64.   On February 6, 2017, defendant J. GARCIA, using coded language in a text message, told Co-conspirator 6 that the heroin he mailed would arrive in Sacramento, California, the following day.

65.   On February 6, 2017, defendant J. GARCIA and Co-conspirator 6, using coded language in a text message, discussed how Co-conspirator 2 wanted defendant J. GARCIA to send four ounces of heroin to D.B. at XX18 53rd Street in Sacramento, California.

66.   On February 6, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told Banuelos that he mailed the heroin that he purchased from Ruvalcaba and Banuelos.

67.   On February 6, 2017, defendant J. GARCIA mailed a package addressed to D.B. at XX18 53rd Street in Sacramento, California, that contained approximately 100.7 grams of heroin from a UPS store in Huntington Park, California.

68.   On February 10, 2017, defendant ASCENCIO, using coded language in a text message, told defendant J. GARCIA that he needed to obtain a firearm.

69.   On February 10, 2017, defendant J. GARCIA, using coded language in a text message, told defendant ASCENCIO that he also needed to obtain a firearm.

70.   On February 11, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told Co-conspirator 7 that he had attempted to send four ounces of heroin to Co-conspirator 2, but that Co-conspirator 5 had been caught by law enforcement while transporting the heroin.

71.   On February 11, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told Co-conspirator 7 that he had sent four ounces of heroin to Co-conspirator 2, but that there was a government hold placed on the package when it arrived in Sacramento, California.

72.   On February 19, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told an unindicted co-conspirator that defendant J. GARCIA had arranged to have broken gambling machines fixed and new gambling machines installed at one of the "casitas" in F13 Gang territory.

73. On February 20, 2017, defendant ASCENCIO, using coded language in a text message, told defendant J. GARCIA that another F13 Gang member owed defendant J. GARCIA $100 in extortionate taxes.

74. On February 22, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told an unindicted co-conspirator that, if he learned that a member of the F13 Gang violated gang rules, then he would ensure that that member was assaulted.

75. On February 23, 2017, defendant A. GARCIA, using coded language in a telephone conversation, told defendant J. GARCIA that he was collecting extortionate taxes.

76. On February 24, 2017, defendant J. GARCIA and an unindicted co-conspirator, using coded language in a telephone conversation, discussed the distribution of a controlled substance.

77. On February 25, 2017, defendant J. GARCIA and an unindicted co-conspirator, using coded language in a telephone conversation, discussed the distribution of a controlled substance.

78. On March 3, 2017, defendant J. GARCIA, using coded language in a telephone conversation, discussed distributing pound quantities of a controlled substance with an unindicted co-conspirator.

79. On March 9, 2017, defendant GOMEZ, using coded language in a series of text messages, agreed to sell Co-conspirator 8 three units of a controlled substance for a price of $750 per unit.

80. On March 9, 2017, defendant GOMEZ, using coded language in a telephone conversation, agreed to sell Co-conspirator 8 two units of a controlled substance for a price of $750 per unit.

81.   On March 9, 2017, defendant GOMEZ, using coded language in a telephone conversation, told Banuelos that defendant GOMEZ urgently needed three units of heroin from Ruvalcaba.

82.   On March 9, 2017, defendant GOMEZ, using coded language in a text message, told Ruvalcaba that he urgently needed three units of a controlled substance.

83.   On March 9, 2017, defendant GOMEZ and Ruvalcaba, using coded language in a text message conversation, discussed how Ruvalcaba could only provide defendant GOMEZ with one unit of a controlled substance at that time.

84.   On March 9, 2017, defendant ASCENCIO, using coded language in a telephone conversation, discussed the distribution of cocaine, marijuana, and methamphetamine with an associate of the F13 Gang.

85.   On March 10, 2017, defendant ASCENCIO, using coded language in a telephone conversation, told defendant J. GARCIA that defendant ASCENCIO had assaulted an individual who had been in a fight with an F13 Gang member.

86.   On March 10, 2017, defendant J. GARCIA, using coded language in a telephone conversation, instructed defendant ASCENCIO to ask defendants J. ROMERO and L. ROMERO for help after defendant ASCENCIO had assaulted an individual who had been in a fight with an F13 Gang member.

87.   On March 10, 2017, defendant ASCENCIO, using coded language in a telephone conversation, told defendant BAROCIO that he had assaulted an individual who had been in a fight with an F13 Gang member.

88.   On March 10, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told defendant MADERA to help

26

defendant ASCENCIO who had assaulted an individual, who had been in a fight with an F13 Gang member

89.  On March 10, 2017, defendant BAROCIO, using coded language in a telephone conversation, told defendant ASCENCIO that they should extort the individual who defendant ASCENCIO had assaulted after that individual had been in a fight with an F13 Gang member.

90.  On March 10, 2017, defendant ASCENCIO, using coded language in a telephone conversation, told defendant BAROCIO that he had attempted to extort an individual for touching a member of the F13 Gang in F13 Gang territory.

91.  On March 10, 2017, defendant BAROCIO, using coded language in a telephone conversation, instructed an unindicted co-conspirator that he needed to advise the individual who touched a member of the F13 Gang in F13 Gang territory that the F13 Gang will not allow such behavior.

92.  On March 10, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told defendant MADERA that defendants J. GARCIA, J. ROMERO, and L. ROMERO assaulted an individual in F13 Gang territory.

93.  On March 10, 2017, defendants ASCENCIO and L. ROMERO, using coded language in a telephone conversation, discussed the collection of extortionate taxes.

94.  On March 12, 2017, defendant RODRIGUEZ, using coded language in a telephone conversation, told defendant J. GARCIA that defendant LAREDO recently had been transferred to a high security penitentiary in Beaumont, Texas.

95.  On March 12, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told defendant RODRIGUEZ that

he had a large amount of extortionate taxes and other F13 Gang proceeds for defendant LAREDO.

96.   On March 12, 2017, defendant RODRIGUEZ, using coded language in a telephone conversation, told defendant J. GARCIA not to send defendant LAREDO too much money at a time.

97.   On March 12, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told defendant RODRIGUEZ that defendant J. GARCIA would send defendant LAREDO approximately $400 or $500 of F13 Gang proceeds within a few days.

98.   On March 12, 2017, defendant J. GARCIA and an unindicted co-conspirator, using coded language in a telephone conversation, discussed instructions from Co-conspirator 2 to assault an F13 Gang member with outstanding debts.

99.   On March 13, 2017, defendant RODRIGUEZ, using coded language in a text message, provided defendant J. GARCIA with defendant LAREDO's prison address and MoneyGram information.

100. On March 13, 2017, defendant GOMEZ, using coded language in a telephone conversation, told Co-conspirator 8 that he had attempted to obtain three ounces of a controlled substance.

101. On March 13, 2017, defendant GOMEZ, using coded language in a telephone conversation, told Co-conspirator 8 that he could supply a pound of a controlled substance for $2,800, which could then be resold in prison for at least $400 or $500 per ounce.

102. On March 13, 2017, defendants J. GARCIA and A. GARCIA, using coded language in a telephone conversation, agreed to extort money from an F13 Gang member who had fled from punishment from the F13 Gang.

103. On March 14, 2017, defendant GOMEZ received a voicemail message and a text message from Co-conspirator 8, in which Co-conspirator 8, using coded language, told defendant GOMEZ that he had spoken to Carbajal and that he had asked her to pick up three units of a controlled substance that day, and asked defendant GOMEZ whether Carbajal could sample a gram of black tar heroin for quality.

104. On March 14, 2017, defendant GOMEZ and Carbajal, using coded language in a telephone conversation, discussed how Carbajal was on her way to pick up the controlled substance.

105. On March 14, 2017, defendant GOMEZ, using coded language in a telephone conversation, asked Co-conspirator 8 how many units of a controlled substance defendant GOMEZ should give Carbajal, to which Co-conspirator 8 replied, "three."

106. On March 14, 2017, defendant GOMEZ and Carbajal, using coded language in a telephone conversation, discussed how Carbajal was unable to pick up the controlled substance until the following day.

107. On March 14, 2017, defendants J. GARCIA and A. GARCIA, using coded language in a telephone conversation, discussed extortionate taxes owed by an F13 Gang member.

108. On March 15, 2017, defendants J. GARCIA and GOMEZ, using coded language in a telephone conversation, discussed defendant GOMEZ's collection of extortionate taxes and the percentage of these taxes that defendant GOMEZ was entitled to keep for himself.

109. On March 15, 2017, defendant GOMEZ received a text message from Co-conspirator 8 in which Co-conspirator 8, using coded language, asked defendant GOMEZ if Carbajal could sample a gram or half-gram of black tar heroin for quality.

110. On March 15, 2017, defendant GOMEZ spoke by phone with Co-conspirator 8, at which time Co-conspirator 8, using coded language, reiterated his prior request that Carbajal be permitted to sample a gram or half-gram of black tar heroin for quality.

111. On March 15, 2017, defendant GOMEZ, using coded language in a telephone conversation, asked Banuelos for a sample of black tar heroin.

112. On March 15, 2017, defendant GOMEZ provided Carbajal with three units of a controlled substance.

113. On March 16, 2017, defendant GOMEZ, using coded language in a text message, discussed how Carbajal had been arrested, but had "flushed" the controlled substance that she had purchased the prior day.

114. On March 16, 2017, defendant GOMEZ and Co-conspirator 8, using coded language in a text message, discussed the attempted seizure of a controlled substance from Carbajal.

115. On March 16, 2017, defendant GOMEZ and Co-conspirator 8, using coded language in a telephone conversation, discussed the attempted seizure of a controlled substance from Carbajal.

116. On March 16, 2017, defendant J. GARCIA and an unindicted co-conspirator, using coded language in a telephone conversation, discussed the collection of extortionate taxes from an individual operating a "casita" within F13 Gang territory.

117. On March 17, 2017, defendant MADERA, using coded language in a telephone conversation, spoke with an unindicted co-conspirator, who asked defendant MADERA to come to a location within F13 Gang territory with a gun.

118. On March 17, 2017, defendant MADERA possessed a 9mm Colt Model 2000 pistol, loaded with seven rounds of ammunition, in Los Angeles, California, within the territory controlled by the F13 Gang.

119. On March 18, 2017, defendant ASCENCIO, using coded language in a text message, told defendant J. GARCIA that he needed to obtain a firearm.

120. On March 18, 2017, defendant J. GARCIA, using coded language in a text message, told defendant ASCENCIO to call defendant J. ROMERO to request a firearm.

121. On March 19, 2017, defendant ASCENCIO and an unindicted co-conspirator, using coded language in a telephone conversation, discussed the distribution of approximately half of a pound of methamphetamine.

122. On March 19, 2017, defendants ASCENCIO and MEJIA, using coded language in a telephone conversation, discussed the quality of two pounds of marijuana in defendant ASCENCIO's possession.

123. On March 21, 2017, defendants J. GARCIA and GOMEZ, using coded language in a telephone conversation, discussed defendant GOMEZ's collection of $300 of extortionate taxes.

124. On March 22, 2017, defendant RODRIGUEZ, using coded language in a text message, provided defendant J. GARCIA with defendant LAREDO's prison address and MoneyGram information.

125. On March 22, 2017, defendant GOMEZ, using coded language in a telephone conversation, agreed to supply Co-conspirator 8 a controlled substance via a new potential route into a prison.

126. On March 22, 2017, defendant ASCENCIO, using coded language in a telephone conversation, told Hernandez that he was going to bring Hernandez one unit of methamphetamine.

127. On March 22, 2017, defendant ASCENCIO, using coded language in a telephone conversation, spoke with Hernandez, who asked defendant ASCENCIO to bring one unit of methamphetamine to him so that they could sell it.

128. On March 23, 2017, defendant ASCENCIO, using coded language in a telephone conversation, told defendant J. GARCIA that he found a source of supply for heroin.

129. On March 23, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told defendant ASCENCIO that defendant J. GARCIA already had obtained heroin from another source.

130. On March 23, 2017, defendant ASCENCIO and defendant Hernandez, using coded language in a telephone conversation, discussed how defendant Hernandez's nephew accidently threw out one unit of methamphetamine.

131. On March 24, 2017, defendant RODRIGUEZ, using coded language in a text message, instructed defendant J. GARCIA to collect extortionate taxes.

132. On March 24, 2017, defendant J. GARCIA and Roca, using coded language in a telephone conversation, discussed how Co-conspirator 4 had asked Roca to call defendant J. GARCIA to see whether he had any heroin available.

133. On March 24, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told Roca that he had heroin available and that Co-conspirator 4 knew the price.

134. On March 24, 2017, defendant J. GARCIA and Roca, using coded language in a telephone conversation, discussed Co-conspirator 4's request for one ounce of heroin.

1       135. On March 25, 2017, defendant GOMEZ, using coded language in

2 a telephone conversation, agreed to supply Co-conspirator 8 a

3 controlled substance via a new potential route into a prison.

4       136. On March 25, 2017, defendant GOMEZ, using coded language in

5 a telephone conversation, told Banuelos that he needed to speak to

6 Ruvalcaba to purchase one unit of a controlled substance.

7       137. On March 26, 2017, defendant GOMEZ, using coded language in

8 a telephone conversation, asked Banuelos whether Ruvalcaba could sell

9 him another, more expensive form of a controlled substance.

10       138. On March 27, 2017, defendants RODRIGUEZ and J. GARCIA,

11 using coded language in a telephone conversation, discussed the

12 collection of extortionate taxes for defendant LAREDO.

13       139. On March 27, 2017, defendant J. GARCIA and Roca, using

14 coded language in a telephone conversation, discussed how Co-

15 conspirator 4 needed another ounce of heroin from defendant J.

16 GARCIA.

17       140. On March 27, 2017, defendant J. GARCIA, using coded

18 language in a telephone conversation, told an unindicted co-

19 conspirator that he could sell the unindicted co-conspirator a

20 "piece" of high quality heroin for $600.

21       141. On March 28, 2017, defendant J. GARCIA, using coded

22 language in a telephone conversation, asked defendant ASCENCIO to

23 stay overnight at a "casita" with a firearm.

24       142. On March 28, 2017, defendant J. GARCIA, using coded

25 language in a telephone conversation, told defendant ASCENCIO that he

26 would acquire a gun from defendant J. ROMERO to give to defendant

27 ASCENCIO so that defendant ASCENCIO could protect a "casita"

28 overnight.

143. On March 28, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told Banuelos that he needed to purchase one ounce of heroin from Ruvalcaba and Banuelos, and Banuelos agreed to provide the ounce of heroin to defendant J. GARCIA.

144. On March 28, 2017, defendant ASCENCIO and Hernandez, using coded language in a telephone conversation, discussed Hernandez's drug source from Sinaloa, Mexico, who would sell Hernandez approximately 3.5 grams of heroin for $70.

145. On March 29, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told defendant ASCENCIO that he would arrive at the "casita" soon with other F13 Gang members to transport gambling equipment.

146. On March 29, 2017, defendants J. GARCIA and ASCENCIO, and others known and unknown to the Grand Jury, transported gambling machines from a "casita" controlled by the F13 Gang in F13 Gang territory.

147. On March 30, 2017, defendants LAREDO and J. GARCIA, using coded language in a telephone conversation, discussed the collection of extortionate taxes and the distribution of such taxes to defendant LAREDO and Co-conspirator 3.

148. On March 30, 2017, defendant LAREDO received $400 in his prison account via MoneyGram from an unindicted co-conspirator.

149. On March 30, 2017, defendant BAROCIO, using coded language in a telephone conversation, agreed to sell defendant J. GARCIA one pound of methamphetamine.

1   150. On March 30, 2017, defendant ASCENCIO, using coded language
2   in a telephone conversation, asked defendant BAROCIO for an
3   unspecified amount of cocaine.

4   151. On March 30, 2017, defendants J. GARCIA and A. GARCIA,
5   using coded language in a telephone conversation, discussed
6   extortionate taxes owed by an F13 Gang member.

7   152. On March 31, 2017, defendant BAROCIO, using coded language
8   in a telephone conversation, agreed to sell defendant J. GARCIA four
9   ounces of methamphetamine.

10   153. On March 31, 2017, defendant J. GARCIA, using coded
11   language in a telephone conversation, told an unindicted co-
12   conspirator that he would punish D.B., an F13 Gang member, for
13   violating F13 Gang rules.

14   154. On March 31, 2017, defendant J. GARCIA, using coded
15   language in a telephone conversation, instructed defendant J.
16   GONZALEZ to assault D.B. and to "whoop his motherfuckin' ass."

17   155. On March 31, 2017, defendant J. GONZALEZ, using coded
18   language in a telephone conversation, told defendant J. GARCIA that
19   he knew where to find D.B. and that he would assault D.B.

20   156. On March 31, 2017, defendant J. GARCIA, using coded
21   language in a telephone conversation, told defendant J. GONZALEZ to
22   recruit other members of the F13 Gang and tell them that the
23   leadership of the F13 Gang wanted D.B. to be assaulted.

24   157. On March 31, 2017, defendant J. GONZALEZ, using coded
25   language in a telephone conversation, agreed with defendant J. GARCIA
26   to assault D.B.

27

28

158. On March 31, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told defendant J. GONZALEZ to break D.B.'s legs.

159. On March 31, 2017, an F13 Gang member or associate, assaulted D.B., causing D.B. to sustain a bruised and swollen right eye, as well as lacerations about his right eye, on top of his head, on the right side of his face, on his abdomen, and on his upper right side.

160. On March 31, 2016, defendant J. GONZALEZ, using coded language in a telephone conversation, reported to defendant J. GARCIA that he found D.B. and that D.B. was in the hospital.

161. On March 31, 2017, defendant J. GARCIA, using coded language in a text message, asked Roca how much heroin she needed.

162. On April 2, 2017, defendant ASCENCIO, using coded language in a text message, told defendant J. GARCIA that defendant ASCENCIO needed to obtain a firearm.

163. On April 2, 2017, defendant BAROCIO, using coded language in a telephone conversation, agreed to sell defendant J. GARCIA four ounces of methamphetamine.

164. On April 3, 2017, defendant GOMEZ, using coded language in a telephone conversation, told a drug customer that he would sell heroin for $800 per ounce and methamphetamine for $500 per ounce.

165. On April 4, 2017, defendant J. GARCIA, using coded language in a telephone conversation, asked defendant RODRIGUEZ whether defendant RODRIGUEZ could smuggle a controlled substance into prison.

166. On April 4, 2017, defendant RODRIGUEZ, using coded language in a telephone conversation, told defendant J. GARCIA that defendant RODRIGUEZ could smuggle a controlled substance into prison.

36

167. On April 4, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told defendant RODRIGUEZ that he could provide heroin and methamphetamine to defendant RODRIGUEZ, which subsequently could be distributed in prison.

168. On April 4, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told defendant RODRIGUEZ that he had an ounce of heroin that he was going to sell to an unindicted co-conspirator at Folsom State Prison, in Folsom, California.

169. On April 4, 2017, defendant MEJIA, using coded language in a telephone conversation, told defendant J. GARCIA that he could sell him a firearm.

170. On April 5, 2017, defendant J. ROMERO sold approximately 46 grams of methamphetamine to an individual who he believed was a methamphetamine customer, but who was, in fact, a confidential human source working with law enforcement ("CHS-3") for $540.

171. On April 5, 2017, defendant J. GARCIA, using coded language in a telephone conversation, asked defendant BAROCIO for the price of a pound of methamphetamine and whether defendant J. GARCIA could purchase a pound of methamphetamine for $2,300.

172. On April 5, 2017, defendant BAROCIO, using coded language in a telephone conversation, told defendant J. GARCIA that he could sell a pound of methamphetamine for $2,400.

173. On April 5, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told defendant BAROCIO that he wanted to purchase the methamphetamine immediately.

174. On April 5, 2017, defendants J. GARCIA and A. GARCIA, using coded language in a telephone conversation, discussed extortionate taxes owed by an F13 Gang member.

175. On April 6, 2017, defendants J. GARCIA and GOMEZ, using coded language in a telephone conversation, discussed defendant GOMEZ's collection of $800 of extortionate taxes.

176. On April 6, 2017, defendant J. GARCIA and Marroquin, using coded language in a telephone conversation, discussed how Marroquin could sell defendant J. GARCIA two firearms.

177. On April 6, 2017, defendant J. GARCIA and Marroquin, using coded language in a telephone conversation, discussed the price defendant J. GARCIA would charge Marroquin for a pound of methamphetamine.

178. On April 6, 2017, defendant J. GARCIA and Marroquin, using coded language in a telephone conversation, discussed the comparative black market pricing of methamphetamine in different parts of the United States.

179. On April 9, 2017, defendant LAREDO, using coded language in a telephone conversation, discussed with an unindicted co-conspirator the smuggling of controlled substances into prison.

180. On April 11, 2017, defendant J. ROMERO sold approximately 42 grams of methamphetamine and 17.24 grams of heroin to CHS-3 for $1,300.

181. On April 26, 2017, defendant LAREDO received $500 in his prison account via MoneyGram from an unindicted co-conspirator.

182. On April 27, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told another F13 Gang member, Co-conspirator 10, that he could lend him a firearm, because members of another gang were near Co-conspirator 10's location.

183. On April 28, 2017, defendant J. GARCIA and Co-conspirator 4, using coded language in a telephone conversation, discussed the smuggling of controlled substances into Folsom State Prison.

184. On April 28, 2017, defendant J. GARCIA and an unindicted co-conspirator, using coded language in a telephone conversation, discussed holding an individual who owed a drug debt hostage, until he paid off his debt.

185. On April 28, 2017, defendant BAROCIO, using coded language in a telephone conversation, told an unindicted co-conspirator that defendant BAROCIO could broker a sale of ounce quantities of controlled substances.

186. On April 28, 2017, defendant BAROCIO, using coded language in a telephone conversation, told an unindicted co-conspirator that he could sell "eight balls" of cocaine to the unindicted co-conspirator's coworker.

187. On April 28, 2017, defendant MEJIA discharged a firearm and assaulted R.R., an F13 Gang member, in retaliation for violating gang rules.

188. On April 29, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told Co-conspirator 10 that he would lend him a firearm to use to intimidate members of a rival gang.

189. On April 29, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told an unindicted co-conspirator that R.R. deserved having been shot for violating F13 Gang rules.

190. On April 29, 2017, defendant MEJIA, using coded language in a telephone conversation, told defendant J. GARCIA that he was attempting to conceal his location following the shooting of R.R.

191. On April 29, 2017, defendant MEJIA, using coded language in a telephone conversation, told defendant J. GARCIA that he was carrying two firearms.

192. On April 29, 2017, defendant J. GARCIA, using coded language in a text message, told defendant MEJIA to hide to prevent being arrested by law enforcement.

193. On April 30, 2017, defendant J. GARCIA, using coded language in a telephone conversation, told defendant L. ROMERO that he had lent a firearm to Co-conspirator 10 for his protection, because members of another gang were near Co-conspirator 10's location.

194. On May 2, 2017, defendant GOMEZ, using coded language in a telephone conversation, agreed to assist an unindicted co-conspirator with collecting an extortionate payment and discussed a possible new source of supply of kilogram quantities of controlled substances.

195. On May 2, 2017, defendant BAROCIO and an unindicted co-conspirator, using coded language in a telephone conversation, discussed the pricing and distribution of a controlled substance.

196. On May 2, 2017, defendants J. GARCIA and PINEDA, using coded language in a telephone conversation, discussed the operation of a "casita" in F13 Gang territory.

197. On May 2, 2017, defendant MEJIA, using coded language, told CHS-1 that he had previously hit someone with a pistol and stolen $200 from that person.

1    198. On May 5, 2017, defendant J. GARCIA and GOMEZ, using coded

2  language in a telephone conversation, discussed defendant GOMEZ's

3  collection of extortionate taxes.

4    199. On May 5, 2017, defendant L. ROMERO, using coded language

5  in a telephone conversation, agreed to receive a firearm from

6  defendant J. GARCIA, which he subsequently was going to provide to J.

7  ROMERO.

8    200. On May 5, 2017, defendants J. GARCIA and PINEDA, using

9  coded language in a telephone conversation, discussed the

10  distribution of a controlled substance at a "casita" in F13 Gang

11  territory.

12    201. On May 6, 2017, defendants L. ROMERO and J. GARCIA, using

13  coded language in a telephone conversation, discussed the collection

14  of $100 of extortionate taxes.

15    202. On May 6, 2017, defendants J. GARCIA and PINEDA, using

16  coded language in a telephone conversation, discussed the operation

17  of a "casita" in F13 Gang territory.

18    203. On May 7, 2017, defendants J. GARCIA and PINEDA, using

19  coded language in a telephone conversation, discussed their use of

20  illegal gambling machines at a "casita" in F13 Gang territory.

21    204. On May 8, 2017, defendant BAROCIO, using coded language in

22  a telephone conversation, offered to sell a unit of a controlled

23  substance to an unindicted co-conspirator.

24    205. On May 8, 2017, defendants J. GARCIA and PINEDA, using

25  coded language in a telephone conversation, discussed their use of

26  illegal gambling machines at a "casita" in F13 Gang territory.

27    206. On May 10, 2017, defendant J. GARCIA, using coded language

28  in a telephone conversation, asked defendant L. ROMERO whether he

obtained packaging materials for use in selling controlled
substances.

207. On May 10, 2017, defendant L. ROMERO, using coded language
in a telephone conversation, told defendant J. GARCIA that he had a
scale available to weigh controlled substances.

208. On May 10, 2017, defendant J. GARCIA and Cervantes, using
coded language in a telephone conversation, discussed the quality of
$250 worth of heroin that Cervantes had provided to defendant J.
GARCIA.

209. On May 12, 2017, defendant GOMEZ, using coded language in a
telephone conversation, arranged to purchase a controlled substance
from Ruvalcaba.

210. On May 12, 2017, defendant BAROCIO, using coded language in
a telephone conversation, told defendant J. GARCIA that he would
distribute cocaine.

211. On May 12, 2017, defendant MEJIA, using coded language in a
text message, told defendant J. GARCIA that he could provide .45
caliber bullets to defendant L. ROMERO.

212. On May 12, 2017, defendant MEJIA possessed a Llama MAX-I
model, .45 caliber semi-automatic pistol, bearing serial number
71040403402, loaded with seven rounds of .45 caliber ammunition in
F13 Gang territory.

213. On May 13, 2017, defendant J. ROMERO possessed a Taurus
model PT 140 G2, .40 Smith & Wesson caliber pistol, bearing serial
number SIP15252, loaded with ten rounds of .40 Smith & Wesson caliber
ammunition, in F13 Gang territory.

214. On May 13, 2017, defendant J. GARCIA, using coded language
in a telephone conversation, told defendant RODRIGUEZ that law

enforcement had executed a search warrant on the "casita" located in F13 Gang territory at X24 East Florence Avenue in Los Angeles, California.

215. On May 13, 2017, defendant GOMEZ, using coded language in a telephone conversation, discussed smuggling a controlled substance into a prison with an unindicted co-conspirator.

216. On May 13, 2017, defendants J. GARCIA and PINEDA, using coded language in a telephone conversation, discussed the execution of a search warrant at a "casita" in F13 Gang territory, and the resulting seizure of illegal gambling machines.

217. On May 13, 2017, defendant J. GARCIA and Cardenas, using coded language in a text message conversation, discussed whether defendant J. GARCIA could provide Cardenas with one or two ounces of a controlled substance for redistribution to a customer.

218. On May 15, 2017, defendant J. ROMERO, using coded language in a telephone conversation, told defendant J. GARCIA that, on May 13, 2017, during the execution of a search warrant, defendant J. ROMERO had placed his firearm in the freezer of the "casita" located at X24 East Florence Avenue in F13 Gang territory in Los Angeles, California.

219. On May 16, 2017, defendant ASCENCIO sold approximately 1.962 grams of methamphetamine to CHS-3 for $100.

220. On May 16, 2017, defendant ASCENCIO, using coded language during an in-person conversation, told CHS-3 that defendant ASCENCIO recently had sold a firearm.

221. On May 18, 2017, defendant ASCENCIO sold approximately 110 grams of methamphetamine to CHS-3 for $1,250.

222. On May 18, 2017, defendant ASCENCIO, using coded language during an in-person conversation, told CHS-3 that he transports firearms from Las Vegas, Nevada, to Los Angeles, California.

223. On May 18, 2017, defendant ASCENCIO, using coded language during an in-person conversation, told CHS-3 that he could sell CHS-3 cocaine, but that it is expensive.

224. On May 18, 2017, defendant J. ROMERO, using coded language in a telephone conversation, agreed to assault and rob an F13 Gang member who took property belonging to the F13 Gang.

225. On May 18, 2017, defendant PINEDA, using coded language in a telephone conversation, told defendant J. GARCIA that she had three units of a controlled substance available to sell to defendant ASCENCIO.

226. On May 22, 2017, defendant J. GARCIA, using coded language in a text message, told defendant RODRIGUEZ that he had collected extortionate taxes for Co-conspirators 1 and 2.

227. On May 22, 2017, defendant J. ROMERO, using coded language in a telephone conversation, informed defendant J. GARCIA about a member or associate of the F13 Gang who had collected money from a "casita" on behalf of the F13 Gang.

228. On May 23, 2017, defendant J. GARCIA and Cervantes, using coded language in a text message conversation, discussed how Cervantes had half of an ounce of heroin, but that he would have a full ounce later in the week.

229. On May 23, 2017, defendants ASCENCIO and BAROCIO, using coded language in a telephone conversation, discussed prices for "china white" and "black" heroin, after which defendant BAROCIO

44

1  agreed to sell defendant ASCENCIO two units of "black" heroin for
2  $700 per ounce.

3      230. On May 25, 2017, defendant ASCENCIO sold approximately 52.1
4  grams of heroin to CHS-3 for $1,700.

5      231. On June 10, 2017, defendants LAREDO and J. GARCIA, using
6  coded language in a telephone conversation, discussed the possession
7  and distribution of pound quantities of a controlled substance.

8      232. On June 12, 2017, defendant BAROCIO, using coded language
9  in a telephone conversation, discussed with an unindicted co-
10 conspirator the sale of a firearm.

11     233. On June 13, 2017, defendant J. ROMERO and an unindicted co-
12 conspirator, using coded language in a telephone conversation,
13 discussed the potential murder and assault of an individual who owed
14 a debt to them.

15     234. On June 17, 2017, defendant BAROCIO, using coded language
16 in a telephone conversation, discussed with an unindicted co-
17 conspirator the sale of a firearm.

18     235. On June 21, 2017, defendant MADERA sold approximately 54
19 grams of methamphetamine to CHS-1 for $500.

20     236. On June 22, 2017, defendant L. ROMERO, using coded language
21 in a telephone conversation, offered to purchase a controlled
22 substance.

23     237. On June 23, 2017, defendant J. ROMERO, using coded language
24 in a telephone conversation, asked defendant L. ROMERO for an ounce
25 of a controlled substance so that it could be sold at a "casita."

26     238. On June 23, 2017, defendant L. ROMERO, using coded language
27 in a telephone conversation, told defendant J. ROMERO that he could
28 provide defendant J. ROMERO with an ounce of a controlled substance.

45

239. On September 17, 2017, defendant J. GARCIA possessed approximately 24.8 grams of methamphetamine; a Taurus TCP PT738 model .380 caliber pistol, bearing serial number 87845C; and six rounds of .380 caliber ammunition.

240. On November 8, 2017, defendant J. ROMERO possessed approximately 448.7 grams of methamphetamine; a Davis Industries model P-380, .380 caliber semiautomatic pistol, bearing serial number AP093790; and a Norinco semiautomatic rifle, model MAK-90, 7.62 caliber, bearing serial number 22779.

241. On November 17, 2017, defendants LAREDO and RODRIGUEZ, using coded language in a telephone conversation, discussed the collection of extortionate taxes and the distribution of 40% of such proceeds to defendant LAREDO, Co-conspirator 1, Co-conspirator 2, and Co-conspirator 3.

242. On November 23, 2017, defendant LAREDO, using coded language in a telephone conversation, told defendant RODRIGUEZ that defendant J. GARCIA must provide 40% of the money that he earns as part of his F13 Gang activity to defendant LAREDO, Co-conspirator 1, Co-conspirator 2, and Co-conspirator 3.

243. On December 12, 2017, an unindicted co-conspirator, at the direction of defendant MONTANEZ, collected $400 in extortionate fines from a confidential human source working with law enforcement ("CHS-7") for violating F13 Gang rules.

244. On December 12, 2017, defendant MONTANEZ collected $800 in extortionate fines from CHS-7 for violating F13 Gang rules.

245. On December 13, 2017, defendant MONTANEZ, using coded language in a telephone conversation, told CHS-7 to only give an extortionate fine payment to defendant MONTANEZ.

46

246. On December 13, 2017, defendant MONTANEZ collected $2,500 in extortionate fines from CHS-7 for violating F13 Gang rules.

247. On December 13, 2017, defendant MONTANEZ, using coded language during an in-person conversation, told CHS-7 that he owed an additional $800 of extortionate fines for violating F13 Gang rules.

248. On December 18, 2017, defendant SILLAS, using coded language in a telephone conversation, told CHS-7 that he was going to sell CHS-7 a firearm for $800.

249. On December 18, 2017, defendant SILLAS and an unindicted co-conspirator sold CHS-7 a custom-made .223 caliber assault style long rifle with no serial number, two magazines, and 15 rounds of .223 caliber ammunition.

250. On January 11, 2018, defendant MONTANEZ collected a $1,000 extortionate fine from CHS-1 for violating F13 Gang rules.

251. On January 11, 2018, defendant MONTANEZ, using coded language, told CHS-1 that defendant MONTANEZ previously had "beat up" a person, and that CHS-1 should "fuck [the person's] ass up" the next time that he sees that person.

252. On January 16, 2018, defendant SILLAS, using coded language in a telephone conversation, discussed arranging the sale of approximately four ounces of methamphetamine with CHS-7.

253. On January 17, 2018, defendant SILLAS, using coded language in a telephone conversation, told CHS-7 that he would obtain the phone number for a source of methamphetamine who could supply CHS-7 with methamphetamine.

254. On January 17, 2018, defendant SILLAS, using coded language in a telephone conversation, told CHS-7 that CHS-7 owed defendant

47

1  MONTANEZ $1,200 in extortionate fines and that defendants SILLAS and
2  L. ROMERO would pick up this payment from CHS-7.

3      255. On January 17, 2018, defendant SILLAS, using coded language
4  in a telephone conversation, told CHS-7 that defendant L. ROMERO was
5  planning on assaulting CHS-7 as soon as CHS-7 leaves CHS-7's home.

6      256. On January 17, 2018, defendant L. ROMERO, using coded
7  language in a telephone conversation, told CHS-7 that CHS-7 must call
8  defendant MONTANEZ to discuss the extortionate payments that CHS-7
9  owed defendant MONTANEZ.

10     257. On January 17, 2018, defendant MONTANEZ, using coded
11  language in a telephone conversation, told CHS-7 that defendant
12  MONTANEZ was currently the shot-caller of the F13 Gang.

13     258. On January 17, 2018, defendant MONTANEZ, using coded
14  language in a telephone conversation, told CHS-7 that CHS-7 could not
15  sell controlled substances in F13 Gang territory, or elsewhere,
16  because CHS-7 violated F13 Gang rules.

17     259. On January 17, 2018, defendant MONTANEZ, using coded
18  language in a telephone conversation, told CHS-7 that CHS-7 could
19  continue to arrange for the sale of controlled substances in F13 Gang
20  territory, or elsewhere, as long as the controlled substance were
21  purchased from defendant MONTANEZ.

22     260. On January 17, 2018, defendant MONTANEZ, using coded
23  language in a telephone conversation, told CHS-7 that if CHS-7
24  continued to sell controlled substances in F13 Gang territory, or
25  elsewhere, that CHS-7 had not purchased from defendant MONTANEZ,
26  defendant MONTANEZ would send people to CHS-7's home to assault
27  and/or murder CHS-7.

28

261. On January 17, 2018, defendant MONTANEZ, using coded language in a telephone conversation, told CHS-7 that CHS-7 owed defendant MONTANEZ $1,200 in extortionate fines.

262. On January 18, 2018, defendant SILLAS, using coded language in a telephone conversation, provided CHS-7 instructions as to where to meet Alvarez to purchase methamphetamine, which CHS-7 did, purchasing approximately 112 grams of methamphetamine from Alvarez in exchange for $600.

263. On January 18, 2018, defendant SILLAS was paid $200 by CHS-7 in exchange for arranging for CHS-7's purchase of approximately 112 grams of methamphetamine from Alvarez to CHS-7.

264. On January 18, 2018, defendant MONTANEZ, using coded language in a telephone conversation, told CHS-7 that defendant MONTANEZ needed to collect $400 in extortionate fines from CHS-7.

265. On January 18, 2018, defendant SILLAS, using coded language in a telephone conversation, collected $400 in extortionate fines from CHS-7.

266. On January 18, 2018, defendant SILLAS, using coded language in a telephone conversation, told CHS-7 that defendant SILLAS had forwarded the $400 in extortionate fines paid by CHS-7 to defendant MONTANEZ.

267. On January 19, 2018, defendant L. ROMERO possessed a Springfield XD-9 model, 9mm semi-automatic pistol, bearing serial number XD822061, loaded with 11 rounds of 9mm ammunition.

268. On January 25, 2018, defendant MONTANEZ, using coded language in a telephone conversation, told CHS-7 to bring him $400 in extortionate fines.

269. On January 25, 2018, defendant MONTANEZ sent $200 of extortionate tax or fine payments to defendant LAREDO via MoneyGram.

270. On February 18, 2018, defendant MONTANEZ sent $100 of extortionate tax or fine payments to defendant LAREDO via MoneyGram.

271. On March 21, 2018, defendant MONTANEZ sent $300 of extortionate tax or fine payments to defendant LAREDO via MoneyGram.

272. On March 25, 2018, defendant RODRIGUEZ, using coded language in a telephone conversation, instructed CHS-7 that defendant LAREDO wanted the F13 Gang to increase its territory and control in Los Angeles, California.

273. On May 12, 2018, defendant RODRIGUEZ, using coded language in a telephone conversation, directed CHS-7 to meet Regalado in the area of 79th Street and Western Avenue in Los Angeles, California, to purchase approximately one pound of methamphetamine, which CHS-7 did, purchasing approximately 442.7 grams of methamphetamine from Regalado for $1,650.

274. On May 14, 2018, defendant RODRIGUEZ, using coded language in a voicemail, directed CHS-7 to obtain methamphetamine from Regalado, which, on May 15, 2018, CHS-7 did, receiving approximately 442.3 grams of methamphetamine from Regalado.

275. On May 15, 2018, defendant RODRIGUEZ, using coded language in a telephone conversation, told CHS-7 that either defendant RODRIGUEZ or Co-conspirator 9 would ensure that defendant LAREDO, Co-conspirator 1, Co-conspirator 2, and Co-conspirator 3, received their share of money earned from the sale of the methamphetamine that CHS-7 had obtained from Regalado that day.

D.    SPECIAL SENTENCING ALLEGATIONS

The Grand Jury further alleges that:

1.   Beginning on a date unknown to the Grand Jury, and continuing to on or about December 20, 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendants LAREDO, RODRIGUEZ, MONTANEZ, J. GARCIA, C. GONZALEZ, GOMEZ, ASCENCIO, J. ROMERO, L. ROMERO, BAROCIO, MADERA, MEJIA, SILLAS, PINEDA, and A. GARCIA, and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit the following offenses:

(a)   To distribute and to possess with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, and at least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii).

(b)   To distribute and to possess with intent to distribute at least one kilogram of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(i).

1                            COUNT TWO

2                       [18 U.S.C. § 1959(a)(6)]

3        1.   Paragraphs 1 through 11 of the Introductory Allegations of

4   this Indictment are re-alleged and incorporated by reference as if

5   fully set forth herein.

6        2.   At all times relevant to this Indictment, the F13 Gang,

7   including its leaders, members, and associates, constituted an

8   "enterprise," as defined by Title 18, United States Code, Section

9   1959(b)(2), that is, a group of individuals associated in fact,

10  although not a legal entity, which was engaged in, and the activities

11  of which affected, interstate and foreign commerce.  The enterprise

12  constituted an ongoing organization whose members functioned as a

13  continuing unit for a common purpose of achieving the objectives of

14  the enterprise.

15       3.   At all times relevant to this Indictment, the F13 Gang,

16  through its leaders, members, and associates, engaged in racketeering

17  activity, as defined in Title 18, United States Code, Sections

18  1959(b)(1) and 1961(1), consisting of multiple acts involving:

19       (1) murder, in violation of California Penal Code Sections 21a,

20  31, 182, 187, 189, 190, and 664;

21       (2) extortion, in violation of California Penal Code Sections

22  21a, 31, 182, 518, 519, 520, 664;

23       multiple acts indictable under:

24       (1) Title 18, United States Code, Section 1955 (relating to

25  prohibition on illegal gambling businesses);

26       (2) Title 18, United States Code, Section 1956 (relating to the

27  laundering of monetary instruments);

28       and multiple offenses involving drug trafficking in violation of

Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

4.   On or about March 31, 2017, in Los Angeles County, within the Central District of California, for the purpose of maintaining and increasing position in the F13 Gang, an enterprise engaged in racketeering activity, defendants J. GARCIA and J. GONZALEZ conspired to commit an assault of D.B. that would result in serious bodily injury to D.B., in violation of California Penal Code Sections 182 and 245.

COUNT THREE

[18 U.S.C. § 1959(a)(3)]

1.    Paragraphs 1 through 3 of Count Two of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

2.    On or about April 28, 2017, in Los Angeles County, within the Central District of California, for the purpose of maintaining and increasing position in the F13 Gang, an enterprise engaged in racketeering activity, defendant MEJIA assaulted with a dangerous weapon R.R., in violation of California Penal Code Section 245(a)(2).

1          COUNT FOUR

2          [21 U.S.C. § 846]

3       1.   Paragraphs 1 through 11 of the Introductory Allegations are

4  re-alleged and incorporated by reference as if fully set forth

5  herein.

6  A.   OBJECTS OF THE CONSPIRACY

7       2.   Beginning on a date unknown, and continuing to on or about

8  December 20, 2018, in Los Angeles County, within the Central District

9  of California, and elsewhere, defendants LAREDO, RODRIGUEZ, MONTANEZ,

10  J. GARCIA, C. GONZALEZ, GOMEZ, ASCENCIO, J. ROMERO, L. ROMERO,

11  BAROCIO, MADERA, MEJIA, SILLAS, PINEDA, REGALADO, ALVAREZ, RUVALCABA,

12  BANUELOS, CARBAJAL, ROCA, CARDENAS, HERNANDEZ, CERVANTES, and

13  MARROQUIN, Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, Co-

14  Conspirator 4, Co-Conspirator 5, Co-Conspirator 6, Co-Conspirator 7,

15  Co-Conspirator 8, Co-Conspirator 9, and others known and unknown to

16  the Grand Jury, conspired and agreed with each other to knowingly and

17  intentionally commit the following offenses:

18          (a)  To distribute, and to possess with intent to

19  distribute, at least 500 grams of a mixture and substance containing

20  a detectable amount of methamphetamine, and at least 50 grams of

21  methamphetamine, a Schedule II controlled substance, in violation of

22  Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii);

23          (b)  To distribute, and to possess with intent to

24  distribute, at least one kilogram of a mixture and substance

25  containing a detectable amount of heroin, a Schedule I narcotic drug

26  controlled substance, in violation of Title 21, United States Code,

27  Sections 841(a)(1), (b)(1)(A)(i);

28

1       (c)   To distribute, and to possess with intent to

2  distribute, cocaine, a Schedule II narcotic drug controlled

3  substance, in violation of Title 21, United States Code, Sections

4  841(a)(1), (b)(1)(C); and

5       (d)   To distribute, and to possess with intent to

6  distribute, marijuana, a Schedule I narcotic drug controlled

7  substance, in violation of Title 21, United States Code, Sections

8  841(a)(1), (b)(1)(C).

9  B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE

10      ACCOMPLISHED

11      3.   The Grand Jury re-alleges and incorporates by reference as

12  if fully set forth herein paragraphs 1 through 10 of Section B of

13  Count One of this Indictment.

14      4.   Defendants MONTANEZ, J. GARCIA, C. GONZALEZ, GOMEZ,

15  ASCENCIO, J. ROMERO, L. ROMERO, BAROCIO, MADERA, SILLAS, PINEDA,

16  REGALADO, ALVAREZ, RUVALCABA, BANUELOS, CARBAJAL, ROCA, CARDENAS,

17  HERNANDEZ, CERVANTES, and MARROQUIN, and others known and unknown to

18  the Grand Jury, would provide, and assist F13 Gang members and

19  associates in obtaining, controlled substances for further

20  distribution.

21  C.   OVERT ACTS

22      5.   In furtherance of the conspiracy, and to accomplish the

23  objects of the conspiracy, on or about the following dates,

24  defendants MONTANEZ, J. GARCIA, C. GONZALEZ, GOMEZ, ASCENCIO, J.

25  ROMERO, L. ROMERO, BAROCIO, MADERA, SILLAS, PINEDA, REGALADO,

26  ALVAREZ, RUVALCABA, BANUELOS, CARBAJAL, ROCA, CARDENAS, HERNANDEZ,

27  CERVANTES, and MARROQUIN, and others known and unknown to the Grand

28  Jury, committed various overt acts, within the Central District of

California, and elsewhere, including, but not limited to, overt acts 1, 3-4, 5-24, 27-28, 30-34, 36-71, 73, 75-84, 93-97, 99-101, 103-144, 147-152, 161-186, 188, 194-196, 198-202, 204, 206-219, 221-223, 225-231, 235-242, 252-253, 258-260, 262-263, 267, and 269-275, as set forth in Count One, which are hereby re-alleged and incorporated by reference as if fully set forth herein.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about May 11, 2016, in Los Angeles County, within the Central District of California, defendant CHRISTOPHER GONZALEZ, also known as ("aka") "Solo," aka "Soliman," aka "Lil Psycho," aka "Soli," knowingly and intentionally distributed at least 50 grams, that is, approximately 52 grams, of methamphetamine, a Schedule II controlled substance.

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about May 23, 2016, in Los Angeles County, within the Central District of California, defendant CHRISTOPHER GONZALEZ, also known as ("aka") "Solo," aka "Soliman," aka "Lil Psycho," aka "Soli," knowingly and intentionally distributed at least 50 grams, that is, approximately 436 grams, of methamphetamine, a Schedule II controlled substance.

1

COUNT SEVEN

2

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i); 18 U.S.C. § 2(a)]

3      On or about February 6, 2017, in Los Angeles County, within the

4  Central District of California, defendants FRANK GOMEZ, also known as

5  ("aka") "Crazy Boy," aka "CB," EULOGIO RUVALCABA, aka "Lou," and

6  JENNIFER BANUELOS, aka "Jenny," each aiding and abetting the others,

7  knowingly and intentionally distributed at least 100 grams, that is,

8  approximately 100.7 grams, of a mixture and substance containing a

9  detectable amount of heroin, a Schedule I narcotic drug controlled

10  substance.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i)]

On or about February 6, 2017, in Los Angeles County, within the Central District of California, defendant JORGE GARCIA, also known as ("aka") "Lil Blazer," aka "Lil B," aka "LB," aka "Little Blaze," aka "Mona," aka "Gloria's Little Sister," knowingly and intentionally possessed with intent to distribute at least 100 grams, that is, approximately 100.7 grams, of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

1

COUNT NINE

2

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

3      On or about April 5, 2017, in Los Angeles County, within the

4   Central District of California, defendant JESUS ROMERO, also known as

5   "Spanky," knowingly and intentionally distributed at least five

6   grams, that is, approximately 46 grams, of methamphetamine, a

7   Schedule II controlled substance.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT TEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about April 11, 2017, in Los Angeles County, within the Central District of California, defendant JESUS ROMERO, also known as "Spanky," knowingly and intentionally distributed at least five grams, that is, approximately 42 grams, of methamphetamine, a Schedule II controlled substance.

COUNT ELEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about April 11, 2017, in Los Angeles County, within the Central District of California, defendant JESUS ROMERO, also known as "Spanky," knowingly and intentionally distributed heroin, a Schedule I narcotic drug controlled substance.

COUNT TWELVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about May 16, 2017, in Los Angeles County, within the Central District of California, defendant RENE MOISES ASCENCIO, also known as "Player," knowingly and intentionally distributed methamphetamine, a Schedule II controlled substance.

COUNT THIRTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about May 18, 2017, in Los Angeles County, within the Central District of California, defendant RENE MOISES ASCENCIO, also known as "Player," knowingly and intentionally distributed at least 50 grams, that is, approximately 110 grams, of methamphetamine, a Schedule II controlled substance.

COUNT FOURTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about May 25, 2017, in Los Angeles County, within the Central District of California, defendant RENE MOISES ASCENCIO, also known as "Player," knowingly and intentionally distributed heroin, a Schedule I narcotic drug controlled substance.

1

                              COUNT FIFTEEN

2              [21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

3        On or about June 21, 2017, in Los Angeles County, within the

4   Central District of California, defendant EDUARDO MADERA, also known

5   as "Huero," knowingly and intentionally distributed at least 50

6   grams, that is, approximately 54 grams, of methamphetamine, a

7   Schedule II controlled substance.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT SIXTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

On or about January 18, 2018, in Los Angeles County, within the Central District of California, defendants VICTOR SILLAS, also known as ("aka") "Big Show," and JOSE ALVAREZ, aka "Vecino," each aiding and abetting the other, knowingly and intentionally distributed at least 50 grams, that is, approximately 112 grams, of methamphetamine, a Schedule II controlled substance.

COUNT SEVENTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

On or about May 12, 2018, in Los Angeles County, within the Central District of California, defendants FRANCISCO RODRIGUEZ, also known as ("aka") "Dodger," aka "D," aka "Son," and GUADALUPE REGALADO, aka "Lupillo," and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and intentionally distributed at least 50 grams, that is, approximately 442.7 grams, of methamphetamine, a Schedule II controlled substance.

1                        COUNT EIGHTEEN

2        [21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

3        On or about May 15, 2018, in Los Angeles County, within the

4   Central District of California, defendants FRANCISCO RODRIGUEZ, also

5   known as ("aka") "Dodger," aka "D," aka "Son," and GUADALUPE

6   REGALADO, aka "Lupillo," and others known and unknown to the Grand

7   Jury, each aiding and abetting the other, knowingly and intentionally

8   distributed at least 50 grams, that is, approximately 442.3 grams, of

9   methamphetamine, a Schedule II controlled substance.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT NINETEEN

[21 U.S.C. § 843(b)]

On or about March 28, 2017, in Los Angeles County, within the Central District of California, defendant VICTOR NOE HERNANDEZ, also known as ("aka") "Sneaks," aka "Pelon," knowingly and intentionally used a communication facility, that is, a telephone, in committing and in causing and facilitating the commission of a felony drug offense, namely, a violation of Title 21, United States Code, Section 841(a)(1), possession with intent to distribute heroin.

COUNT TWENTY

[21 U.S.C. § 843(b)]

On or about April 6, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant CARLOS MARROQUIN, also known as ("aka") "Bullet," knowingly and intentionally used a communication facility, that is, a telephone, in committing and in causing and facilitating the commission of a felony drug offense, namely, a violation of Title 21, United States Code, Section 841(a)(1), possession with intent to distribute methamphetamine.

1

COUNT TWENTY-ONE

2

[21 U.S.C. § 843(b)]

3   On or about May 13, 2017, in Los Angeles County, within the

4 Central District of California, defendant IAN CARDENAS, also known as

5 ("aka") "Samuel Camacho," aka "Fats," knowingly and intentionally

6 used a communication facility, that is, a telephone, in committing

7 and in causing and facilitating the commission of a felony drug

8 offense, namely, a violation of Title 21, United States Code, Section

9 841(a)(1), possession with intent to distribute methamphetamine.

COUNT TWENTY-TWO

[21 U.S.C. § 843(b)]

On or about May 23, 2017, in Los Angeles County, within the Central District of California, defendant GONZALO CERVANTES, also known as "Gonzo," knowingly and intentionally used a communication facility, that is, a telephone, in committing and in causing and facilitating the commission of a felony drug offense, namely, a violation of Title 21, United States Code, Section 841(a)(1), possession with intent to distribute heroin.

1

COUNT TWENTY-THREE

2

[18 U.S.C. §§ 924(c)(1)(A)(ii), (iii)]

3      On or about April 28, 2017, in Los Angeles County, within the

4 Central District of California, defendant SAMUEL FLORES MEJIA, also

5 known as "Menace," knowingly used and carried a firearm during and in

6 relation to a crime of violence, namely, violent crime in aid of

7 racketeering, in violation of Title 18, United States Code, Section

8 1959(a)(3), as charged in Count Three of this Indictment, and, in

9 doing so, brandished and discharged the firearm.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

COUNT TWENTY-FOUR

2

[18 U.S.C. § 924(c)(1)(A)(i)]

3       On or about September 17, 2017, in Los Angeles County, within

4  the Central District of California, defendant JORGE GARCIA, also

5  known as ("aka") "Lil Blazer," aka "Lil B," aka "LB," aka "Little

6  Blaze," aka "Mona," knowingly carried a firearm, namely, a Taurus TCP

7  PT738 model .380 caliber pistol, bearing serial number 87845C, during

8  and in relation to, and possessed that firearm in furtherance of, a

9  drug trafficking crime, namely, conspiracy to distribute and to

10  possess with the intent to distribute methamphetamine, in violation

11  of Title 21, United States Code, Section 846, as charged in Count

12  Four of this Indictment.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT TWENTY-FIVE

[18 U.S.C. § 922(g)(1)]

On or about May 13, 2017, in Los Angeles County, within the Central District of California, defendant JESUS ROMERO, also known as "Spanky" ("J. ROMERO"), knowingly possessed the following firearm and ammunition, each in and affecting interstate and foreign commerce:

1.   a Taurus model PT 140 G2, .40 Smith & Wesson caliber pistol, bearing serial number SIP15252;

2.   nine rounds of .40 Smith & Wesson caliber ammunition with headstamp "SIG"; and

3.   one round of .40 Smith & Wesson caliber ammunition with headstamp "Tulammo."

Such possession occurred after defendant J. ROMERO had been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

1.   Carrying a Concealed Firearm, in violation of California Penal Code Section 12025(a)(2), in the Superior Court for the State of California, County of Los Angeles, case number VA058443, on or about April 6, 2000;

2.   Accessory After the Fact, in violation of California Penal Code Section 32, in the Superior Court for the State of California, County of Los Angeles, case number BA350531, on or about July 7, 2009;

3.   Possession of a Controlled Substance, in violation of California Health & Safety Code Section 11377(a), in the Superior Court for the State of California, County of Los Angeles, case number VA115497, on or about June 28, 2010;

1        4.    Possession of a Controlled Substance, in violation of

2   California Health & Safety Code Section 11377(a), in the Superior

3   Court for the State of California, County of Los Angeles, case number

4   BA414754, on or about August 16, 2013;

5        5.    Possession of Ammunition, in violation of California Penal

6   Code Section 30305(a)(1), in the Superior Court for the State of

7   California, County of Los Angeles, case number BA414754, on or about

8   August 16, 2013;

9        6.    Theft, in violation of California Penal Code Section

10   484e(d), in the Superior Court for the State of California, County of

11   Los Angeles, case number VA132230, on or about November 13, 2013.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT TWENTY-SIX

[18 U.S.C. § 922(g)(1)]

On or about September 17, 2017, in Los Angeles County, within the Central District of California, defendant JORGE GARCIA, also known as ("aka") "Lil Blazer," aka "Lil B," aka "LB," aka "Little Blaze," aka "Mona" ("J. GARCIA"), knowingly possessed the following firearm and ammunition, each in and affecting interstate and foreign commerce:

1.    a Taurus TCP PT738 model .380 caliber pistol, bearing serial number 87845C; and

2.    six rounds of .380 caliber ammunition with headstamp "JAG."

Such possession occurred after defendant J. GARCIA had been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

1.    Prisoner in Possession of a Weapon, in violation of California Penal Code Section 4502(a), in the Superior Court of the State of California, County of Los Angeles, case number BA188518, on or about August 3, 1999;

2.    Assault, in violation of California Penal Code Section 4501, in the Superior Court of the State of California, County of Los Angeles, case number VA051891, on or about June 2, 2000;

3.    Carjacking, in violation of California Penal Code Section 215(a), in the Superior Court of the State of California, County of Los Angeles, case number VA070813, on or about February 25, 2003;

4.    Robbery, in violation of California Penal Code Section 211, in the Superior Court of the State of California, County of Los Angeles, case number VA070813, on or about February 25, 2003.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 1963(a)(3) and 28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 1963, and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction under Count One of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

a.   Any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, as a result of any such offense;

b.   Any interest in, security of, claim against, or property or contractual right of any kind affording a source or influence over, any enterprise which the convicted defendant has established, operated, controlled, conducted, or participated in the conduct of, as a result of any such offense; and

c.   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs a. and b.

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of any defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been

81

transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[21 U.S.C. § 853 and 28 U.S.C. § 2461(c)]

1.     Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853, and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction under any of Counts Four through Twenty-Two of this Indictment.

2.     Any defendant so convicted shall forfeit to the United States of America the following:

        a.    All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, from any such offense;

        b.    All right, title, and interest in any and all property used to facilitate, or intended to be used to facilitate the commission of any such offense; and

        c.    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs a. and b. above.

3.     Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of any convicted defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

1                    FORFEITURE ALLEGATION THREE

2              [18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

3        1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States of America

5   will seek forfeiture as part of any sentence, pursuant to Title 18,

6   United States Code, Section 924(d)(1) and Title 28, United States

7   Code, Section 2461(c), in the event of any defendant's conviction

8   under any of Counts Twenty-Three through Twenty-Six of this

9   Indictment.

10       2.    Any defendant so convicted shall forfeit to the United

11  States of America the following property:

12            a.    All right, title, and interest in any firearm or

13  ammunition involved in or used in any such offense.

14            b.    To the extent such property is not available for

15  forfeiture, a sum of money equal to the total value of the property

16  described in subparagraph a. above.

17       3.    Pursuant to Title 21, United States Code, Section 853(p),

18  as incorporated by Title 18, United States Code, Section 982(b), the

19  convicted defendant shall forfeit substitute property, up to the

20  value of the property described in the preceding paragraph if, as the

21  result of any act or omission of the convicted defendant, the

22  property described in the preceding paragraph or any portion thereof

23  (a) cannot be located upon the exercise of due diligence; (b) has

24  been transferred, sold to, or deposited with a third party; (c) has

25  been placed beyond the jurisdiction of the court; (d) has been

26  //

27  //

28  //

                              85

1   substantially diminished in value; or (e) has been commingled with

2   other property that cannot be divided without difficulty.

3

4                                         A TRUE BILL

5

6                                         _____/S/_____

7                                         Foreperson

8   NICOLA T. HANNA
    United States Attorney

9

10

11  LAWRENCE S. MIDDLETON
    Assistant United States Attorney
    Chief, Criminal Division

12

13  KEVIN M. LALLY
    Assistant United States Attorney
    Chief, Organized Crime Drug

14      Enforcement Task Force Section

15  BENJAMIN R. BARRON
    Assistant United States Attorney

16  Deputy Chief, Organized Crime
        Drug Enforcement Task Force

17      Section

18  CHRISTOPHER C. KENDALL
    Assistant United States Attorney

19  Organized Crime Drug Enforcement
        Task Force Section

20

21

22

23

24

25

26

27

28